UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

JOSHUA HOLLEN, on behalf of himself
and on behalf of all others similarly situated,

      Plaintiff,

v.                           Case No. 8:19-cv-02129-JSM-TGW

COMMUNICATIONS UNLIMITED
CONTRACTING SERVICES, INC.,

      Defendant.
_____/

## DEFENDANT'S UNOPPOSED MOTION TO COMPEL INDIVIDUAL ARBITRATION AND TO STAY LITIGATION

Defendant COMMUNICATIONS UNLIMITED CONTRACTING SERVICES, INC. ("Defendant" or "CU"), by and through its undersigned counsel, hereby moves unopposed for an order under the Federal Arbitration Act, 9 U.S.C. §§ 1, *et seq.*:

1.     Compelling Plaintiff Joshua Hollen ("Plaintiff") to arbitrate his claims on an individual basis against Defendant and to comply with his Arbitration Agreement (attached as Exhibit 1 hereto), which governs these claims;

2.     Staying all further proceedings in this case pending the arbitration, including the time for Defendants to answer or otherwise respond to the Complaint; and,

3.     Dismissing the putative class or collective action claims with prejudice.

The grounds for this Motion are more fully set forth in the following Memorandum of Law.

## MEMORANDUM OF LAW

### I.   INTRODUCTION

Plaintiff, a former employee of Defendant, purportedly on behalf of himself and others similarly situated, alleges unpaid overtime in violation of the Fair Labor Standards Act.

At the outset of his employment with Defendant, Plaintiff and Defendant agreed to resolve all employment-related disputes through binding arbitration. The parties also agreed that claims must be brought on an individual basis and may not be pursued on a collective basis. Based on the Parties' agreement to arbitrate, and Plaintiff's lack of opposition to this Motion, Defendant respectfully requests the Court compel Plaintiff to participate in the binding arbitration of his claims on an individual basis and stay the case pending completion of the arbitration.

## II.    FACTUAL BACKGROUND

Plaintiff began employment with Defendant on or about October 23, 2017. At the outset of his employment, Plaintiff agreed to resolve his employment-related disputes through binding arbitration. A true and accurate copy of the fully executed MUTUAL AGREEMENT TO ARBITRATE CLAIMS (the "Arbitration Agreement") is attached as Exhibit 1.

On August 26, 2019, despite the terms of the Arbitration Agreement, Plaintiff filed a two-count Complaint against Communications Unlimited, Inc. for unpaid wages in this Court.[1] Further, Plaintiff purports to bring his claims on behalf of himself and on behalf of others, pursuant to the collective action procedures found in 29 U.S.C. § 216(b).

All of the claims alleged in the lawsuit are subject to the parties' binding Arbitration Agreement. Plaintiff's claims fall directly within the scope of arbitration agreement. The Agreement requires arbitration of "all claims or controversies" "that CU may have against me or that I may have against CU . . . ." Ex. 1 at 1. CU is defined to include C.U. Employment, Inc., and "other related entities" and "affiliates." *Id.* Defendant Communications Unlimited Contracting Services, Inc., is or was a related entity and affiliate of C.U. Employment, Inc.

---

[1] Plaintiff amended his Complaint on September 4, 2019 and is now suing Communications Unlimited Contracting Services, Inc.

Without limitation, the Agreement specifically covers all claims at issue. It specifically

states:

> **Claims Covered by the Agreement**
> CU and I mutually agree to resolve by arbitration all claims or controversies ("claim" or "claims"), past, present or future[.]
> . . .
> This Agreement covers any and all disputes that arise between CU and me with the exception of claims that are expressly excluded from arbitration elsewhere in the Agreement. Examples of the kinds of claims that are covered by this Agreement include, but are not limited to: . . . claims for wages, salary, benefits, or other compensation due, claims for violation of the Fair Labor Standards Act . . . or any state law relating to the payment of wages and/or hours[.]

Ex. 1, at 2.

The Agreement also provides that the required arbitration shall be a "bilateral arbitration

that exclusively involves CU and I and that arbitration pursuant to the Agreement will not be

conducted as a class action, collective action, or joint or consolidated action involving parties other

than CU and I." Ex. 1 at 2.

In relevant part the agreement states:

> With respect to any claim, the parties further expressly agree and acknowledge that they are waiving any of the following rights that they would have or may have had in the absence of the Agreement: (i) the right bring a claim or seek to bring a claim as class action or collective action; (ii) the right to join or attempt to join other persons or entities in a single action; (iii) the right to have the party's claim consolidated or to seek to have the party's claim consolidated with the claims of other persons or entities, and (iv) the right to participate in or attempt to participate in any class, collective, joint, or consolidated action or proceeding. The parties further expressly agree that the arbitrator selected pursuant to this Agreement (the "Arbitrator") may only resolve claims of CU and/or I and that the Arbitrator lacks the power to conduct any class, collective, joint, or consolidated proceedings.

Ex. 1 at 2.

Accordingly, Plaintiff and Defendant had in place a mutually-binding arbitration agreement in which they each promised to resolve employment-related disputes—including claims asserted in this lawsuit —through individual binding arbitration.

The strong public policy in favor of enforcing arbitration agreements in employment cases prevents Plaintiff from reneging on his agreement with Defendant. *See AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 131 S. Ct. 1740, 1745-46 (2011) (FAA establishes strong federal policy, even a presumption, in favor of arbitration). That same policy requires this Court to enter an order compelling Plaintiff to arbitrate his claim and staying this action pending arbitration.

## III.    THE AGREEMENT IS FAVORED AND ENFORCEABLE UNDER FEDERAL LAW.

The Federal Arbitration Act ("FAA") makes private agreements to submit disputes to arbitration valid and enforceable and requires courts to enforce arbitration agreements in the same manner as it enforces all contracts. *See* 9 U.S.C. §§ 2, 4. The FAA "embodies the national policy favoring arbitration . . . " *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 443 (2006). The FAA thus permits a federal district court to issue orders necessary to compel the parties to arbitrate their dispute. The FAA states, "an agreement in writing to submit to arbitration .... shall be valid, irrevocable, and enforceable, save upon grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2.

**A.  Employment Agreements Are Covered By The FAA.[2]**

The United States Supreme Court has held that the FAA may be used to enforce arbitration agreements between employers and employees.  *See Circuit City Stores v. Adams*, 532 U.S. 105 (2001).  In *Circuit City*, the Supreme Court considered whether the arbitration component of Circuit City's Dispute Resolution Program could be enforced pursuant to the FAA.  In concluding enforcement was appropriate, the Supreme Court expressly recognized the benefits of arbitrating employment disputes:

> [F]or parties to employment contracts . . . there are real benefits to the enforcement of arbitration provisions.  **We have been clear in rejecting the supposition that the advantages of the arbitration process somehow disappear when transferred to the employment context.**  Arbitration agreements allow parties to avoid the costs of litigation, a benefit that may be of particular importance in employment litigation.

*Id.* at 122-123 (citations omitted; emphasis added).  Thus, federal policy favors the enforcement of valid arbitration agreements, particularly in disputes arising in the employment context.

The Eleventh Circuit has accepted that an employer may make compulsory arbitration a condition of employment.  *See Weeks v. Harden Mfg. Corp.*, 291 F.3d 1307, 1315 (11th Cir. 2002) ("[O]ur own precedent, the mandate of the Supreme Court, and the holdings of almost every other circuit" make clear that "compulsory arbitration agreements for employment discrimination claims [are lawful].")  In addition, the Agreement must be construed in favor of arbitration.  *E.E.O.C. v.*

---

[2] Similarly, the Florida Arbitration Code states:

> Two or more parties may agree in writing to submit to arbitration any controversy … arising between them relating to such contract or the failure or refusal to perform the whole or any part thereof. . . . Such agreement or provision shall be valid, enforceable, and irrevocable without regard to the justiciable character of the controversy; provided that this act shall not apply to any such agreement or provision to arbitrate in which it is stipulated that this law shall not apply or to any arbitration or award thereunder.

Fla. Stat. § 682.02.  Florida law thus also strongly favors the resolution of conflicts through arbitration.  *See Roe v. Amica Mut. Ins. Co.*, 533 So. 2d 279 (Fla. 1998); *Florida Select Ins. Co. v. Keelean*, 727 So. 2d 1131 (Fla. 2d DCA 1999).  In fact, if an enforceable arbitration agreement exists, the parties are required to resolve the arbitrable claims in an arbitration proceeding -- the court has no discretion in that situation.  *See Keelean*, 727 So. 2d at 1132; *KFC Nat'l Mgt. Co. v. Beauregard*, 739 So. 2d 630, 631 (Fla. 5th DCA 1999).  Accordingly, this Court should compel arbitration under Florida law even if the FAA did not apply.

*Waffle House, Inc*., 534 U.S. 279, 294 (2002) ("ambiguities in the language of the agreement should be resolved in favor of arbitration").

The Complaint alleges that the claims arise under the Fair Labor Standards Act for unpaid overtime. (Complaint, Counts I and II). Clearly, the matters alleged in the Complaint fall within the "Agreement to Arbitrate," which specifically includes claims alleging violation of the "Fair Labor Standards Act . . . or any state law relating to the payment of wages and/or hours." (Arbitration Agreement, Ex. 1 at ¶1.)

The Arbitration Agreement between CU and Plaintiff is indisputably subject to the FAA. Indeed, in the Agreement itself, Plaintiff acknowledges: "I understand and agree that CU is engaged in transactions involving interstate commerce, that my employment with CU involves . . . interstate commerce within the meaning of the Federal Arbitration Act; and that the Federal Arbitration Act applies to this Agreement." Ex. 1. *See also* 9 U.S.C. § 2.

**B. The Agreement Constitutes An Enforceable Contract And The Subject Matter Of This Lawsuit Is Covered By The Agreement.**

The United States Supreme Court has reaffirmed that the district court need only consider whether a valid contract exists; any remaining issues are for the Arbitrator. *Nitro-Lift Technologies, L.L.C. v. Howard*, 568 U.S. 17, 133 S. Ct. 500, 503 (2012) (the Arbitration Agreement's "validity is subject to initial court determination; but the validity of the remainder of the contract (if the arbitration provision is valid) is for the arbitrator to decide.").

"[W]hen a contract contains an arbitration clause, a strong presumption in favor of arbitration exists and courts have no choice but to order arbitration unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *CK Witco Corp. v. Paper Allied Indus., Chem. & Energy Workers Int'l Union*, 272 F.3d 419, 421-22 (7th Cir. 2001) (citation omitted) (internal quotation marks omitted).

Accordingly, when faced with a motion to compel arbitration, a court makes a two-step inquiry: (1) did the parties agree to arbitrate the particular dispute at issue; and (2) if so, do legal constraints external to the parties' agreement foreclose arbitration. *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 628 (1985); *Klay v. All Defendants*, 389 F.3d 1191, 1200 (11th Cir. 2004), *cert. denied*, 544 U.S. 1061.  A court looks at these questions with a distinct perspective -- a healthy respect for the "national policy" favoring arbitration and an aim toward "rigorously" enforcing such agreements.  *Klay*, 389 F.3d at 1200.

In this case, the Plaintiff now agrees and acknowledges that he signed the Arbitration Agreement, which mandates arbitration of his claims on an individual basis.

## C. Florida Law Governs The Determination Of The Existence Of A Contract.

Under Florida law,[3] the formation of an enforceable contract requires "an offer, an acceptance, consideration, and sufficient specification of terms so that the obligations involved can be ascertained."  *West Const., Inc. v. Florida Blacktop, Inc.*, 88 So. 3d 301, 304 (Fla. 4th DCA 2012) (citations omitted).   Whether an express contract has been formed "depends not on the agreement of two minds in one intention, but on the agreement of two sets of external signs -- not on the parties having meant the same thing but on their having said the same thing." *Blackhawk*

---

[3] "Florida law applies here, since the Arbitration Agreement was executed in Florida and [the Plaintiff's] claims arose in Florida." *Bhim v. Rent-A-Ctr., Inc.*, 655 F. Supp. 2d 1307, 1311 (S.D. Fla. 2009) (citing, *Williams v. Eddie Acardi Motor Co.*, 2008 WL 686222, at *4 (M.D. Fla. March 10, 2008)).  Further, regardless of the choice of law provision in an arbitration agreement, where the FAA applies to the agreement, the arbitration provision is enforceable by Florida courts. *See Jensen v. Rice*, 809 So.2d 895 (Fla. 3d DCA 2002). Federal law mandates that agreements and contracts containing arbitration provisions which involve interstate commerce fall within the scope of the FAA. 9 U.S.C. §§ 1, 2 (2008). When underlying contracts involve interstate commerce, agreements to arbitrate under the law of another state are enforceable in Florida under the FAA. *Jensen v. Rice*, 809 So.2d at 898 (applying Florida law and holding that arbitration clause providing for arbitration in foreign jurisdiction and under laws of another state enforceable in Florida under the FAA); *Trojan Horse, Inc. v. Lakeside Games*, 526 So.2d 194 (Fla. 3d DCA 1988); *Butcher & Singer, Inc. v. Frisch*, 433 So.2d 1360 (Fla. 4th DCA 1983) (finding that trial court correctly enforced arbitration agreement under FAA where contract involved interstate commerce). As noted above, the FAA applies here. There is no question that the contract involves "interstate commerce" (Dkt 4, Am. Compl. ¶12).

*Heating & Plumbing Co., Inc. v. Data Lease Fin. Corp.*, 302 So. 2d 404, 407 (Fla. 1974) (citing,

*Gendzier v. Bielecki*, 97 So. 2d 604, 608 (Fla. 1957)).

Also under Florida law, "[a] promise, no matter how slight, qualifies as consideration if

the promisor agrees to do something that he or she is not already obligated to do." *Cintas Corp.*

*No. 2 v. Schwalier*, 901 So. 2d 307, 309 (Fla. 1st DCA 2005). The Arbitration Agreement provides

that:

> Consideration: The promises by CU and by me to arbitrate differences, rather than
> litigate them before courts or other bodies, provide sufficient consideration for each
> other.

See Arbitration Agreement, Ex. 1 at 7. Here, Plaintiff received as consideration Defendant's

promise to arbitrate any future claims that it might have against him -- something that the company

did not have a pre-existing obligation to do. *Bhim v. Rent-A-Ctr., Inc.*, 655 F. Supp. 2d 1307, 1312

(S.D. Fla. 2009). "Mutually binding promises to arbitrate provide consideration for one another,

and give rise to an enforceable arbitration agreement." *Id.* (citing, *Lemmon v. Lincoln Prop. Co.*,

307 F. Supp. 2d 1352, 1355 (M.D. Fla. 2004); *Albert v. Nat'l Cash Register Co.*, 874 F. Supp.

1324, 1326 (S.D. Fla. 1994); *Kinko's, Inc. v. Payne*, 901 So. 2d 354, 355-56 (Fla. 2d DCA 2005)).

Even if Plaintiff received no other consideration, the mutual promises to arbitrate would

be sufficient to render the Arbitration Agreement enforceable. Plaintiff received additional

consideration, however, in the form of employment with Defendant. Plaintiff continued

employment, and therefore was "provided further consideration in support of the Arbitration

Agreement." *Id.* (citing, *Cintas Corp. No. 2*, 901 So. 2d at 309).

### D. The Employer-Employee Relationship Does Not Make The Agreement Unconscionable.

Nor is the Agreement "unconscionable." *See Caley v. Gulfstream Aerospace Corp.*, 428

F.3d 1359, 1377 (11th Cir. 2005) ("Although there is some bargaining disparity here, as often in

the employment context, the plaintiffs have failed to show that the [arbitration agreement] and its making is so one-sided as to be unconscionable.  Such standard form arbitration agreements are common.") *Id.* at 1367 ("[C]ompulsory arbitration agreements are now common in the workplace, and it is not an unlawful employment practice for an employer to require an employee to arbitrate, rather than litigate, rights under various federal statutes."), *cert. denied*, 547 U.S. 1128 (2006).  *See e.g., Chastain v. Robinson-Humphrey Co.*, 957 F.2d 851, 854 (11th Cir. 1992) ("Under normal circumstances, an arbitration provision within a contract admittedly signed by the contractual parties is sufficient to require the district court to send any controversies to arbitration.").

Accordingly, the Agreement should be enforced according to its terms, and the lawsuit compelled to arbitration. *See* 9 U.S.C. § 3 (court should stay proceeding that should have been in arbitration, and compel arbitration).

## IV.    INDIVIDUAL ARBITRATION MUST BE COMPELLED

Furthermore, consistent with the FAA directive to enforce arbitration agreements according to their terms, the Court should compel Plaintiff to an individual, not class or collective, arbitration.

The Arbitration Agreement states that the arbitration shall be a "bilateral arbitration that exclusively involves CU and I and that arbitration pursuant to the Agreement will not be conducted as a class action, collective action, or joint or consolidated action involving parties other than CU and I." Ex. 1 at 2.

Last year, the Supreme Court confirmed that class action waiver clauses in arbitration agreements should be enforced. *See Epic Sys. Corp. v. Lewis,* 138 S. Ct. 1612, 1632 (2018) ("In the Federal Arbitration Act, Congress has instructed federal courts to enforce agreements to their terms – including terms providing for individualized proceedings."); *see also Catamaran Corp. v. Towncrest Pharmacy*, 864 F.3d 966, 972, 973 (8th Cir. 2017) (absent a "particular" delegation of

the issue "the question of class arbitration belongs with the [court] as a substantive question of arbitrability"); *Caley v. Gulfstream Aerospace Corp.*, 428 F.3d 1359, 1379 (11th Cir. 2005) (affirming dismissal of class claims and order to compel arbitration because the parties had an enforceable agreement to arbitrate on an individual basis); *see also Iappini v. Silverleaf Resorts, Inc.*, 116 F. Supp. 3d 932, 944 (E.D. Mo. 2015) (enforcing arbitration clause and ordering the plaintiffs to arbitrate individually).

Furthermore, the Supreme Court held in *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 684 (2010), that "a party may not be compelled … to submit to class arbitration unless there is a contractual basis for concluding that the party agreed to do so." "The central or 'primary' purpose of the FAA is to ensure that private agreements to arbitrate are enforced according to their terms." *Id.* In 2013, this ruling was confirmed again when the Supreme Court held that "Class arbitration is a matter of consent:  An arbitrator may employ class procedures only if the parties have authorized them." *Oxford Health Plans LLC v. Sutter*, 133 S. Ct. 2064 (2013).

In *Lamps Plus, Inc. v. Varela*, the most recent Supreme Court decision on this issue, the Supreme Court reversed a district court's ruling, which authorized a class arbitration despite the fact that the parties agreement did not provide for class arbitration. 139 S. Ct. 1407, 1419 (2019). In that case, Lamps Plus moved to compel arbitration on an individual rather than classwide basis, and to dismiss the lawsuit. *Id*. at 1413. In a single order, the district court granted the motion to compel arbitration and dismissed Varela's claims without prejudice. *Id*. But the district court rejected Lamps Plus's request for individual arbitration, instead authorizing arbitration on a classwide basis. *Id*. The Supreme Court reversed that ruling, holding that the arbitration agreement at issue "provides no 'contractual basis' for concluding that the parties agreed to class arbitration." *Id*. at 1419.

Here, the Arbitration Agreement does not contain a basis for class or collective arbitration either. To the contrary, it prohibits them. Ex. 1 at 2. Accordingly, because the terms of the agreement specifically prohibit collective or class arbitration, the Court should compel Plaintiff to arbitrate on an individual basis and dismiss any class allegations with prejudice.

It is particularly appropriate in this case to compel Plaintiff's claims to individual arbitration without delay because Plaintiff does not oppose this motion, acknowledges that he entered into the Arbitration Agreement, and agrees to bring his arbitration on an individual basis.

WHEREFORE, Communications Unlimited Contracting Services, Inc. respectfully requests that this Court compel individual arbitrations against Defendant under 9 U.S.C. § 4, stay this litigation under 9 U.S.C. § 3, including Defendant's time to answer the Complaint, and dismiss the putative class claims with prejudice.

## CERTIFICATION PURSUANT TO M.D. FLA. RULE 3.01(g)

Pursuant to Rule 3.01(g) of the Local Rules for the Middle District of Florida, Defendant's counsel has conferred with Plaintiff's counsel in good faith effort to resolve the issues raised in this Motion.  Plaintiff's counsel does not oppose the relief sought in this Motion.

DATED:  September 26, 2019                Respectfully submitted,

*/s/ Ina Young*
Lara J. Peppard
Florida Bar No. 0520055
lara.peppard@ogletree.com
Ina F. Young
Florida Bar No. 0117663
ina.young@ogletree.com
OGLETREE, DEAKINS, NASH,
SMOAK & STEWART, P.C.
100 North Tampa Street, Suite 3600
Tampa, Florida   33602
Telephone:  813.289.1247
Facsimile:  813.289.6530
*Attorney for Defendant*

## <u>CERTIFICATE OF SERVICE</u>

**I HEREBY CERTIFY** that on September 26, 2019, I filed the foregoing with the Clerk

of Court via CM/ECF which will send electronic notification to:

Christopher J. Saba
Wenzel Fenton Cabassa, P.A.
1110 North Florida Avenue, Suite 300
Tampa, Florida  33602

/s/ Ina Young
Attorney

40114307.1

40114307.1